O

# United States District Court
# Central District of California

MARY STARKS, individually and as successor in interest to Decedent RICKIE STARKS,

                Plaintiff,

    v.

COUNTY OF LOS ANGELES, et al.,

                Defendants.

Case № 2:21-cv-05209-ODW (GJSx)

**ORDER CONDITIONALLY GRANTING DEFENDANTS' MOTION TO STAY [14] AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS [13]**

## I.   INTRODUCTION

Plaintiff Mary Starks, individually and as successor in interest to Decedent Rickie Starks, brings this § 1983 action against Defendants County of Los Angeles ("County"), Sheriff Alex Villanueva, Deputy Taylor Ingersoll, and Deputy Edwin Barajas.  Defendants now move to dismiss certain claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to stay the case.  (Mot. Dismiss, ECF No. 13; Mot. Stay, ECF No. 14.)  Having carefully considered the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the

Court **CONDITIONALLY GRANTS** Defendants' Motion to Stay and **DENIES** Defendants' Motion to Dismiss **AS MOOT**.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Around 11:30 P.M. on July 3, 2019, at Rosecrans Avenue and North Oleander Avenue in the Compton neighborhood of Los Angeles, Los Angeles County Sheriff's Department Deputies Barajas and Ingersoll attempted to stop a Cadillac Escalade operated by a nonparty.  (Compl. ¶ 30, ECF No. 1.)  Deputy Barajas was driving the patrol car, and Deputy Ingersoll was the bookman and radio communicator.  (*Id.*)  The attempted stop resulted in a vehicle pursuit, and the deputies chased the Escalade into a nearby residential area.  (*Id.* ¶ 32.)

Decedent Rickie Starks ("Decedent") was riding his bicycle home in this residential area at this time, at the corner of Aranbe Avenue and Spruce Street.  As the deputies chased the Escalade into the area, the driver of the Escalade began shooting at the deputies with an AK-47 assault rifle out of his moving vehicle.  The deputies returned fire, also out of their moving vehicle.  As the Escalade and the deputies turned right onto Aranbe Avenue from Spruce Street, passing Decedent, a bullet struck Decedent, fatally injuring him.  (*Id.* ¶¶ 34–36.)

On October 28, 2019, Plaintiff Mary Starks, individually and as Decedent's successor in interest, filed a Complaint in the Los Angeles Superior Court asserting causes of action against the County for battery, negligence, and violation of the California Bane Act arising from the foregoing events.  The gravamen of Starks's state court action was that Deputies Barajas and Ingersoll were negligent in pursuing and firing their weapons at the Escalade driver during the chase and shoot-out and that Decedent died as a result of that negligence.  (*See* Mot. Stay Ex. 1 ("State Court Compl.") ¶ 25, ECF No. 14-1.)

On February 11, 2021, the Honorable Maurice A. Leiter of the Los Angeles Superior Court granted the County's motion for summary judgment, finding for the County on all of Starks's causes of action.  (Mot. Stay Ex. 3 ("State Court MSJ

Ruling"), ECF No. 14-3.)  Judge Leiter's ruling was based on the finding that, as a matter of law, the force Deputies Barajas and Ingersoll used in chasing and shooting at the Escalade was reasonable.   As Judge Leiter explained, under the theory of transferred intent, "[i]f [Defendant] intended to commit a battery or assault on one person, but by mistake or accident committed the act on [plaintiff], then the battery or assault is the same as if the intended person had been the victim." (*Id.* at 8 (citing CACI 1321).)   Applying this principle to the state law case, in which Starks did not allege any theory of direct intent, Deputies Ingersoll and Barajas committed an intentional battery of Decedent <u>if and only if</u> they had the requisite intent to commit a battery on the Escalade driver.  Thus, if the force the deputies used on the Escalade driver was reasonable, then the officers did not commit an intentional act against the Escalade driver, and accordingly also did not commit an intentional act against Decedent.   Judge Leiter proceeded to grant summary judgment on the primary grounds that the force the deputies used against the Escalade driver was reasonable, and all three of Starks's causes of action therefore failed as to intent.  (*Id.* at 8–9.)

One of the issues the parties disputed in state court was whose bullets struck and killed Decedent: the deputies' or the Escalade driver's.  (*Id.* at 9.)  Judge Leiter rendered his ruling without needing to reach or decide this issue.  (*Id.*)  If the bullet was indeed the Escalade driver's, then Starks had no claim because it was not the deputies who caused his injuries.  If the bullet was one of the deputies', then even so, the force the deputies used was reasonable, absolving them of liability for violations of Decedent's civil rights.

On April 5, 2021, Judge Leiter denied Plaintiff's motion for reconsideration of these findings.  (Mot. Stay Ex. 4 ("State Court Reconsid. Ruling"), ECF No. 14-4).  On May 20, 2021, Starks filed a Notice of Appeal.

Shortly thereafter, on May 25, 2021, Starks filed this action in federal court, alleging violations of 42 U.S.C. § 1983 against the County, Deputies Barajas and Ingersoll, and Sheriff Villanueva arising out of these same events.   Beyond merely

adding the deputies and Sheriff Villanueva as individual Defendants, Starks's federal complaint adds new allegations and a purported new theory of the case.  Specifically, Starks alleges that Deputies Barajas and Ingersoll were attempting to become members of the Executioners, a police deputy gang in Compton that uses violence and unreasonable force against members of the public, in part to get "inked"—i.e., tattooed—with the Executioners symbol, a skeleton with Nazi imagery.  (Compl. ¶¶ 46–52.)  Rather than merely alleging that the deputies negligently shot Decedent during their shoot-out with the Escalade, Starks now alleges somewhat more directly that Deputies Barajas and Ingersoll had a direct (that is, a non-transferred) intent to injure or kill Decedent, and that they carried out this intent in order to become members of the Executioners.  (Compl. ¶ 31.)  At the time Starks initiated her first state-court suit, Starks was not aware of the deputies' affiliation with the Executioners.  (Decl. Marcel F. Sincich ("Sincich Decl.") ¶ 2, ECF No. 18-1.)

After Starks filed this case, Defendants simultaneously moved to stay the case and to dismiss it pursuant to Rule 12(b)(6).  Both motions are fully briefed.  (Opp'n Dismiss, ECF No. 17; Reply Dismiss, ECF No. 19; Opp'n Stay, ECF No. 18; Reply Stay, ECF No. 20.)

For the reasons that follow, a stay of the case is appropriate given the Complaint as it is currently filed.  Thus, the Court will conditionally grant the Motion to Stay but will provide Starks an opportunity to amend the Complaint to state a claim that is clearly different in scope from the claims in the state law case.  The result of this disposition is that the Motion to Dismiss is moot.

### III.   LEGAL STANDARD

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Peck v. County of Orange*, 528 F. Supp. 3d 1100, 1105 (C.D. Cal. 2021) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).  The court "may, with propriety, find it is efficient for its own docket

and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1098 (S.D. Cal. 2017).

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Among the factors weighed in deciding whether to stay a pending proceeding are (1) "the possible damages which may result from granting a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 255); *Peck*, 528 F. Supp. 3d at 1105–06 (observing that this test, which originated with *Landis*, continues to apply to decisions to stay proceedings).

## IV.   DISCUSSION

Defendants move to stay the case on the grounds that Judge Leiter, in granting summary judgment, already found the force used by Deputies Barajas and Ingersoll to be objectively reasonable, and that this determination is currently on appeal. Defendants argue that the Court should stay this case until the California Court of Appeal either affirms or reverses Judge Leiter's ruling. As for the Rule 12(b)(6) Motion, Defendants move to dismiss the claims against Sheriff Villanueva on the grounds that he is not liable for Decedent's death in an individual capacity, and they move to dismiss Starks's fourth through sixth claims on the basis that Plaintiff failed to state facts sufficient to support claims for municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1987).

Defendants' argument is based on their assertion that the final disposition of the state court matter would have preclusive effect on this case under principles of either issue preclusion or claim preclusion. "[C]laim preclusion . . . prohibits successive

litigation of the very same claim by the same parties." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (internal quotation marks omitted). Issue preclusion, by contrast, "provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *U.S. v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (internal quotation marks omitted).

Based on the *Landis* factors, a district courts may properly stay a case pending appeal of a related state court action where the appellate decision in the state court action would have preclusive effect on the case. First, both parties would suffer hardship and inequity if the later case proceeds, at great expense and effort by both sides, only to find that the claim or issue litigated has already been preclusively decided in the prior case. Second, staying a case when a prior case is likely to have preclusive effect advances the orderly administration of justice because it avoids the risk of inconsistent judgments and the possible complications that might arise should the court in the later case reach a different conclusion than the court in the earlier case before the earlier case reaches a final disposition.

Thus, the appropriateness of a stay comes down to whether this case presents the same claims or issues that were already litigated in the state court matter. If it does, as Defendants argue, then the Court should stay the case pending the California Court of Appeal's disposition on the state court summary judgment ruling. If, however, the issues in this case are not the same as the issues litigated in state court, then a complete stay of this case may not be appropriate, because the mechanisms of claim preclusion and issue preclusion will not necessarily decide the issues presented by this case. *See Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1105 (S.D. Cal. 2017) (denying stay where later action would "remain[] unaffected" by an injunction in an earlier case); *see also Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 816–17 (N.D. Cal. 2020) (granting stay pending Supreme Court opinion on

dispositive issue); *Galilea, LLC v. Pantaenius Am. Ltd.*, 433 F. Supp. 3d 1183, 1188 (D. Mont. 2019) (granting stay pending resolution of related arbitration proceedings).

Starks contends that her federal case is not the same case as the state court case because the state court decision did not address whether the deputies shot Decedent, did not analyze whether the deputies shot Starks intentionally, and did not consider evidence regarding the deputies' affiliation with the Executioners.  (Opp'n Stay 3; Sincich Decl. ¶ 3.)   Starks is correct that the state court decision did not address whether the deputies shot Decedent, but this was primarily because the issue was moot given the Court's determination that, whether or not it was indeed one of the deputies' bullets that struck Decedent, the deputies' use of force *during their attempt to chase and apprehend the Escalade driver* was reasonable, and the County was therefore not liable under any of Starks's alleged theories.   Thus, if all Starks is alleging in this federal case is that the deputies shot Decedent while intending to immobilize and apprehend the Escalade driver (and having no separate intent or purpose that Decedent be injured as a result of their firing their guns), then this case is no different from the state case, even if Judge Leiter's opinion ultimately passed on the question of exactly whose bullet struck Decedent.

The Court looks to the structure and allegations of the Complaint to determine whether this case presents claims or issues that are sufficiently different from those in the state court case.   The Complaint consists of a series of factual allegations regarding the night in question, (Compl. ¶¶ 30–45), followed by a description of the Executioners and the deputies' alleged relationship to the Executioners, (Compl. ¶¶ 46–54).

The key difference between Starks's theory of the case in state court and her theory of this case is the nature of the intent of the deputies at the time of the incident. The following are typical of the allegations in the Complaint that speak to the issue of the deputies' intent:

- "DEFENDANTS BARAJAS and INGERSOLL intentionally fired their weapons at DECEDENT through the lower right side of the front windshield and the right passenger window of the patrol vehicle attempting to strike DECEDENT center mass." (Compl. ¶ 35.)

- "DEFENDANTS BARAJAS and INGERSOLL intentionally fired their weapons at DECEDENT, striking and causing DECEDENT to be killed." (Compl. ¶ 44.)

- "DEFENDANTS BARAJAS and INGERSOLL intentionally fired with weapons every time they pulled the trigger. DEFENDANTS BARAJAS and INGERSOLL discharged their firearms at a specific target each time they pulled the trigger, including at the DECEDENT." (Compl. ¶ 65.)

That the concept of "intent" has different meanings is well documented in both criminal and civil law. The Second Restatement of the Law of Torts, in specifying the meaning of "intent" as used throughout the Restatement, illustrates this difference succinctly and is particularly well suited to the case at hand:

> When an actor fires a gun in the midst of the Mojave Desert, he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result. "Intent" [in this Restatement] is limited, wherever it is used, to the consequences of the act.

Rest. (2d) Torts § 8(a) cmt. a. Herein, the Court refers to the Restatement's preferred definition of "intent" as the "contemplated result" definition. Under the "contemplated result" sense of intent, the Mojave Desert shooter's act was not intentional.

The other definition of intent is more basic and more broad, and in the Restatement's example would refer to the actor's mental decision to pull the trigger followed by the actor's volitional act of pulling the trigger (separate and apart from what was in the actor's mind at the time about the consequences of pulling the trigger). The Court refers to this second, broader definition as the "volitional act"

definition.  Under the "volitional act" definition of intent, the Mojave Desert shooter's act was intentional.

Here, resolution of Defendants' Motion to Stay comes down to whether Starks in this federal case is alleging a "contemplated result" theory of the deputies' intent or merely a "volitional act" theory of intent.  If the latter, then the case should be stayed. That the deputies volitionally pulled their triggers as part of the shoot-out with the Escalade was fully alleged and litigated in the state court case.  No one ever disputed that the deputies intended to pull their triggers, contemplated pulling their triggers, and then pulled their triggers.  Judge Leiter determined that, when the deputies intentionally pulled their triggers (under the "volitional act" sense of intent), even if one or more of their bullets struck Decedent, the County was nevertheless not liable because the deputies' pulling of their triggers was part of a reasonable use of force against the Escalade driver.  (State Court MSJ Ruling 9.)  Thus, if all Starks is alleging in this case is that the deputies took the volitional act of pulling their triggers during a shoot-out and that one or more of the bullets happened to strike Decedent, then Starks is alleging no more than she alleged in the state court case.  This means that a final judgment in the state court matter would be very likely to have preclusive effect in this case, and accordingly, pursuant to the *Landis* factors, this case should be stayed pending the state court's final judgment.

If, on the other hand, Starks is alleging the former—that the deputies had a "contemplated result"-type intent in shooting Decedent—then this case may be sufficiently different from the state court case such that final disposition of the latter would not have preclusive effect here.  In the state court case, Starks alleged that the deputies were negligent in their attempt to immobilize and apprehend the Escalade driver.  In opposing summary judgment, Starks attempted to introduce information about the Executioners and a more direct theory of officer intent based on a desire to get inked, but Judge Leiter expressly refused to consider that information, noting that it went beyond Starks's allegations as framed in the pleadings.  (State Court MSJ

Ruling 7.)   Thus, if Starks is alleging herein a more direct theory of officer intent based on a desire to get inked—that is, a theory in which the deputies formed a new intent, separate and apart from any intent with regards to the Escalade driver, to knowingly and purposefully injure an innocent bystander, in order to get inked—then it is rather *un*likely that final disposition of the state court matter would have preclusive effect here, because the state trial court made it clear that this issue was not before it.   With no preclusive effect, in turn, Defendants' arguments in support of a *Landis* stay would lose most of their force.

At this juncture, however, the Court is not convinced that Starks has alleged a "contemplated result" theory of the deputies' intent that sufficiently differentiates this case from the previous one.   The language Starks uses in the Complaint to describe the deputies' intent places this case on the knife's edge of the two senses of intent discussed above.   For all her allegations regarding the deputies' intent, Starks did not set forth a clear, unambiguous allegation that, at the moment the deputies pulled their triggers, their mental state included a conscious intent or desire *that Decedent's injury should result*.   Without such an allegation, this case does no more than re-allege the facts of the state court case.   Moreover, without such "contemplated result"-type intent, Starks's allegations regarding the Executioners appear to be irrelevant, at least to the question of whether this case is sufficiently different from the state court case to avoid a stay here.

The Court need not and does not determine at this juncture whether the Complaint states any claim based on a "contemplated result" theory of intent.   The Court simply determines that the current Complaint is not sufficiently differentiated from the state court Complaint to justify allowing the case to proceed while the state court appeal is pending.

To effectuate this determination, the Court **CONDITIONALLY GRANTS** Defendants' Motion to Stay.   Starks is **GRANTED** leave to amend her Complaint to state claims sufficiently different from her state court claims, as discussed herein.

1   Starks may file an amended complaint no later than **twenty-one (21) days** from the
2   date of this Order, in which case the Motion to Stay will be deemed denied.  If Starks
3   does not timely file an amended complaint, the Motion to Stay will be deemed
4   immediately and automatically granted, and this case will be stayed.

5         The effect of this disposition is that Defendants' Motion to Dismiss is moot,
6   regardless of how Starks proceeds.  If Starks proceeds to file a First Amended
7   Complaint, then Defendants' Motion to Dismiss, directed toward the original
8   Complaint, will be moot.  If Starks does not proceed to file a First Amended
9   Complaint, then the Court will stay the case without determining the Motion to
10  Dismiss, rendering the Motion to Dismiss moot.  Therefore, the Court **DENIES**
11  Defendants' Motion to Dismiss **AS MOOT**.

12        This disposition is **WITHOUT PREJUDICE** to Defendants later filing a new
13  motion to fully or partially stay the case based on Starks's anticipated First Amended
14  Complaint (or to Defendants filing a motion to dismiss the First Amended Complaint).

15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## V.    CONCLUSION

The Court **CONDITIONALLY GRANTS** Defendants' Motion to Stay.  (ECF No. 14.)   Starks is **GRANTED** leave to file a First Amended Complaint within twenty-one (21) days of the date of this Order.  If Starks does so, then Defendants' Motion to Stay will be **denied**. If Starks does not timely file an amended complaint, then as of the expiration of twenty-one days, Defendants' Motion to Stay will be immediately and automatically **granted**, and this case will be stayed pending the state court appeal.

Defendants' Motion to Dismiss is **DENIED AS MOOT**.  (ECF No. 13.)

**IT IS SO ORDERED.**

January 18, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**