O

# United States District Court
# Central District of California

| | |
|---|---|
| MARY STARKS, individually and as successor in interest to Decedent RICKIE STARKS,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>    Defendants. | Case № 2:21-cv-05209-ODW (GJSx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [37]** |

## I. INTRODUCTION

Plaintiff Mary Starks, individually and as successor in interest to Decedent Rickie Starks, brings this 42 U.S.C. § 1983 action against Defendants County of Los Angeles ("County"), Sheriff Alex Villanueva, Deputy Taylor Ingersoll, and Deputy Edwin Barajas. Defendants now move to dismiss Starks's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. Dismiss ("Motion" or "Mot."), ECF No. 37; FAC, ECF No. 24.) Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **DENIES** the Motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

In a prior Order conditionally granting Defendants' Motion to Stay, the Court recited the allegations of this case as follows.

> Around 11:30 P.M. on July 3, 2019, at Rosecrans Avenue and North Oleander Avenue in the Compton neighborhood of Los Angeles, Los Angeles County Sheriff's Department Deputies Barajas and Ingersoll attempted to stop a Cadillac Escalade operated by a nonparty. (Compl. ¶ 30, ECF No. 1.) Deputy Barajas was driving the patrol car, and Deputy Ingersoll was the bookman and radio communicator. (*Id.*) The attempted stop resulted in a vehicle pursuit, and the deputies chased the Escalade into a nearby residential area. (*Id.* ¶ 32.)
>
> Decedent Rickie Starks ("Decedent") was riding his bicycle home in this residential area at this time, at the corner of Aranbe Avenue and Spruce Street. As the deputies chased the Escalade into the area, the driver of the Escalade began shooting at the deputies with an AK-47 assault rifle out of his moving vehicle. The deputies returned fire, also out of their moving vehicle. As the Escalade and the deputies turned right onto Aranbe Avenue from Spruce Street, passing Decedent, a bullet struck Decedent, fatally injuring him. (*Id.* ¶¶ 34–36.)

(Order Cond. Granting Mot. Stay ("Stay Order") 2, ECF No. 22.) This same tragic story is told in the FAC. (FAC ¶¶ 30–44.) The key difference between the FAC and the original Complaint is that the FAC contains additional allegations regarding Starks's theory of the case and specifically the deputies' intent at the time. In particular, Starks now very directly alleges that Decedent died "when County Deputies Barajas and Ingersoll intentionally aimed at and shot Decedent with the contemplated result of causing Decedent death or serious bodily injury and failed to provide or call for medical aid after observing Decedent be struck by their gunfire." (FAC ¶ 27.) This same allegation is reiterated in various ways throughout the FAC. (*See, e.g.*, FAC ¶ 65.)

Starks also reasserts her allegations regarding the Defendant officers' membership in The Executioners, which, as alleged, is a violent deputy gang that

recruits deputies from the Los Angeles County Sheriff's Compton Station based upon the deputy's use of violence against citizens of Compton. (FAC ¶¶ 46, 48.) As alleged, Barajas and Ingersoll shot Decedent in anticipation of becoming "inked," and they in fact became inked by The Executioners shortly after they shot Decedent. (FAC ¶¶ 54, 65.) "Inking" refers to The Executioners' practice of rewarding its members for committing violent acts by tattooing them with a skeleton bearing Nazi imagery and holding an AK-47. (*See* FAC ¶¶ 50–51.) Starks alleges that of the approximately 100 patrol deputies at the Compton Station, twenty are inked members of The Executioners and another twenty are "prospects" who are "chasing ink." (FAC ¶ 52.)

On October 28, 2019, Plaintiff Mary Starks, individually and as Decedent's successor in interest, filed a Complaint in the Los Angeles Superior Court asserting causes of action against the County for battery, negligence, and violation of the California Bane Act arising from the foregoing events. The gravamen of Starks's state court action was that Barajas and Ingersoll were negligent in pursuing and firing their weapons at the Escalade during the chase and shoot-out and that Decedent died as an unintended result of the pursuit of the Escalade. (*See* Request for Judicial Notice[1] ("RJN") Ex. 1 ("State Court Compl.") ¶ 25, ECF No. 37-1.)

On February 11, 2021, the Honorable Maurice A. Leiter of the Los Angeles Superior Court granted the County's motion for summary judgment, finding for the County on all of Starks's causes of action. (RJN Ex. 3 ("State Court Order Granting Summ. J."), ECF No. 37-2.) Judge Leiter's ruling was based on the finding that, as a matter of law, the force Barajas and Ingersoll used in chasing and shooting at the

---

[1] The Court **GRANTS** Defendants' Request for Judicial Notice and takes judicial notice of the Complaint, the Order Granting Summary Judgment, and the Order Denying Plaintiff's Motion for Reconsideration in the state court case. (RJN Exs. 1–3, ECF Nos. 37-1 to 37-3.) However, as Defendants are well aware, "when a court takes judicial notice of another court's filings, it does so not for the truth of the facts recited therein, but for the existence of the opinion and its legal effect. *See, e.g.*, *S.B. by & through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1229 n.1 (E.D. Cal. 2018); (*cf.* Order Den. Defs.' RJN, ECF No. 33 (striking earlier motion to dismiss due to Defendants' improper use of judicially noticed materials)).

Escalade was reasonable. As Judge Leiter explained, under the theory of transferred intent, "[i]f [defendant] intended to commit a battery or assault on one person, but by mistake or accident committed the act on [plaintiff], then the battery or assault is the same as if the intended person had been the victim." (*Id.* at 8 (citing CACI 1321).) Applying this principle to the state law case, in which Starks did not allege any theory of direct intent, Ingersoll and Barajas committed an intentional battery of Decedent <u>if and only if</u> they had the requisite intent to commit a battery on the Escalade driver. Thus, if the force the deputies used on the Escalade driver was reasonable, then the officers did not commit an intentional act against the Escalade driver, and accordingly also did not commit an intentional act against Decedent. Judge Leiter proceeded to grant summary judgment on the primary grounds that the force the deputies used against the Escalade driver was reasonable, and all three of Starks's causes of action therefore failed as to intent. (*Id.* at 8–9.)

On April 5, 2021, Judge Leiter denied Plaintiff's motion for reconsideration of these findings. (RJN Ex. 3 ("State Court Order Den. Recons."), ECF No. 37-3). On May 20, 2021, Starks filed a Notice of Appeal.

Shortly thereafter, on June 25, 2021, Starks filed this action in federal court, alleging six violations of 42 U.S.C. § 1983 against the County, Barajas, Ingersoll, and Sheriff Villanueva arising out of these same events: (1) Fourth Amendment—excessive force; (2) Fourth Amendment—denial of medical care; (3) Fourteenth Amendment—interference with familial relations; (4) Municipal Liability—inadequate training; (5) Municipal Liability—unconstitutional custom, practice, or policy; and (6) Municipal Liability—ratification. Starks asserts her first three claims against Barajas and Ingersoll and her fourth through sixth claims against the County and Sheriff Villanueva. Beyond merely adding Defendants and claims, however, Starks's federal complaint contains new substantive allegations not pleaded in state court. (Compl. ¶¶ 31, 46–52.) Starks's federal complaint also hinted at, but did not establish with clear allegations, a new theory of the case based on Barajas's and

Ingersoll's direct intent to injure or kill Decedent and their subsequent membership in The Executioners.

Defendants then moved to stay this federal case pending the final outcome of the appeal in the state-court case. (Mot. Stay, ECF No. 14.)  The Court conditionally granted the Motion, reasoning that a stay was appropriate given that the Complaint as it was then filed failed to sufficiently differentiate this federal case from the already-pending state case. (Stay Order 10.)  The Court provided Starks an opportunity to amend the Complaint to state a claim clearly different in scope from the claims in the state law case. (*Id.* at 10–11.)  On February 7, 2022, Starks availed herself of this opportunity by filing the FAC.

Defendants now move to dismiss all six of Starks's claims pursuant to Rule 12(b)(6), and the Motion is fully briefed. (Opp'n, ECF No. 39; Reply, ECF No. 41.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim—to survive a dismissal motion. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City*

*of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## IV. DISCUSSION

Defendants argue that the entire FAC must be dismissed on the basis of claim preclusion; that the claims against Sheriff Villanueva must be dismissed because § 1983 does not contemplate such supervisor liability; and that the fourth through sixth claims must be dismissed for failure to sufficiently allege municipal liability pursuant to *Monell*. The Court addresses each argument in turn.

### A. *Res judicata* (all claims)

Defendants first argue that the doctrine of *res judicata* prevents Starks from asserting her claims in the present matter. As a preliminary matter, *res judicata* often refers to both claim preclusion and issue preclusion. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In their Memorandum, Defendants toss together the law of

claim preclusion, the law of issue preclusion, and their analysis of both doctrines into a single, confusing, undifferentiated subsection. (Mot. 14–18.) In so doing, Defendants fail to present an organized, coherent argument demonstrating that all the elements of either claim preclusion or issue preclusion are satisfied. As Defendants are the ones seeking dismissal of the case, Defendants bear the burden of persuasion; that is, they must present arguments demonstrating that dismissal is appropriate. *Mil-Ray v. EVP Int'l, LLC*, No. 3:19-cv-00944-YY, 2021 WL 2903225, at *1 (D. Ore. July 8, 2021) (noting consensus among federal courts that "Federal Rule 12(b)(6) places th[e] burden [of persuasion] on the moving party" (quoting *Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016))). Defendants fail in this burden, and the Court may properly reject Defendants' *res judicata* arguments on this basis.

Even so, neither claim preclusion nor issue preclusion, properly analyzed, provide a basis for dismissal at this stage. When the judgment with the purported preclusive effect is a state court judgment, federal courts apply the claim preclusion and issue preclusion rules of the state that rendered the underlying judgment; accordingly, the Court conducts this analysis under California law. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83–84 (1984); *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007).

*1.  Claim Preclusion*

Claim preclusion "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Id.* at 897. In California, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015). Claim preclusion is to be "directed at 'entire

causes of action.'" *Boyd v. Freeman*, 18 Cal. App. 5th 847, 854 (2017) (quoting *Faerber*, 61 Cal. 4th at 824).

To determine whether two causes of action are the same, California courts inquire whether the causes of action constitute "the violation of a single primary right." *Id.* (quoting *Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994)). "The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004). The primary right theory

> is a theory of code pleading that has long been followed in California. It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.]

*Mycogen*, 28 Cal. 4th at 904 (quoting *Crowley*, 8 Cal. 4th at 681).

Under these principles, the primary right Starks placed at issue in the state case is fundamentally different from the primary right she places issue in the present case. In the state court case, the primary duty of the deputies was to use reasonable force in chasing down and attempting to apprehend the Escalade driver, and the wrongful act the deputies were accused of committing was applying unreasonable force *to the Escalade driver* at the time a bullet struck Decedent. Here, by contrast, the primary duty of the deputies is the duty not to use any direct, contemplated-result-type force against an innocent citizen who is completely uninvolved in any wrongdoing, and the wrongful act the deputies are accused of committing is applying unreasonable force *to Decedent directly*. (*See* Stay Order 8–10 (discussing at length difference between "volitional act" intent and "contemplated result" intent)). In plainer terms, the right to be free from getting caught in police cross-fire is not the same as the right to be free

from intentional murder. Proving a violation of each of these two rights would require two fundamentally different theories of the case and two fundamentally different sets of evidence and arguments. Therefore, the two rights are distinct primary rights, and claim preclusion fails.

Claim preclusion fails for a second, independent reason. Under California law, "final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (quoting *People v. Cooper*, 149 Cal. App. 4th 500, 520 (2007)). That is, "[a] final judgment is defined as one that is free from direct attack." *Id.* Thus, in California, "[a]n adjudication is not final 'if an appeal is pending or could still be taken.'" *Contreras-Velazquez v. Fam. Health Ctrs. of San Diego, Inc.*, 62 Cal. App. 5th 88, 103 (2021) (quoting *Riverside Cnty. Transp. Com. v. S. Cal. Gas Co.*, 54 Cal. App. 4th 823, 838 (2020)). Here, the judgment in state court is not free from direct attack and not final because it remains on appeal. Therefore, it cannot have preclusive effect in this case.[2]

For these reasons, claim preclusion does not support Rule 12(b)(6) dismissal of the FAC.

2.   *Issue Preclusion*

"Under California law, issue preclusion applies when six criteria, named the '*Lucido* factors' after the California Supreme Court's seminal case on the doctrine, *Lucido v. Superior Court*, 51 Cal. 3d 335 (1990), are satisfied." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131 (9th Cir. 2019). Those factors are: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) the issue to be precluded must have been actually litigated in the former proceeding; (3) the issue to be precluded must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and

---

[2] Starks raises the final judgment rule, (Opp'n 10), and Defendants make no attempt to address the final judgment rule. (*See generally* Reply.) Accordingly, Defendants are deemed to have conceded to Starks's point.

on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding; and (6) application of issue preclusion must be consistent with the public policies of preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation. *Id.* at 1131–32.

Defendants fail to demonstrate that the *Lucido* factors support application of issue preclusion. At the outset, it is unclear what specific issue or issues Defendants argue were litigated in state court and how those issues preclude Starks's claims here. (*See* Mot. 15–18.) To the extent Defendants assert that the already-litigated issue is that of "Mr. Starks' freedom from the use of excessive and unreasonable force by both Defendant deputies," (Mot. 16), Defendants' argument is unavailing because this issue is not the same in the two cases. In state court, the issue was whether the deputies' use of force on the Escalade driver was reasonable, and the theory underpinning this issue was one of transferred intent. The issue in the present case, by contrast, is whether the deputies used direct, contemplated-result force (reasonable or otherwise) *on Decedent*, and the theory underpinning this issue is one of direct intent. This issue simply was not litigated in the state court case. Thus, issue preclusion does not support Rule 12(b)(6) dismissal of the FAC.

**B. Supervisor Liability (claims against Sheriff Villanueva)**

Next, Defendants argue that Sheriff Villanueva must be dismissed altogether because § 1983 claims "against government officials in their official capacity are really suits against the government employer." (Mot. 18–19 (quoting *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002)).

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F. 2d 642, 646 (9th Cir. 1989). "The requisite causal connection can be established . . . by setting in motion a series of acts

by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207). Moreover, Ninth Circuit Model Jury Instruction 9.4 provides five avenues for individual supervisor liability in § 1983 actions: (1) supervisor directs subordinate, (2) supervisor set in motion acts of subordinate, (3) supervisor knew and failed to act to terminate acts by subordinates, (4) supervisor disregarded obvious consequences, and (5) supervisor's conduct showed reckless indifference to the deprivation by the subordinate of the rights of others.

      Starks clarifies that she is not pursuing a *respondeat superior* theory of liability against Sheriff Villanueva and is instead arguing that he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Opp'n 12 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989))). Here, Starks alleges that, given the existence of The Executioners, Sheriff Villanueva's training policies with respect to deputy "tactics" and "the use of force, including deadly force," were inadequate, and that Sheriff Villanueva maintained policies knowing they would lead, and in fact have previously led to, violations of Constitutional rights. (FAC ¶ 91; *see* FAC ¶ 97 (alleging twenty-one court cases in which County deputies are alleged to have applied unconstitutional deadly force).) Starks further alleges that the conduct of The Executioners is so pervasive that its existence constitutes an unconstitutional policy or custom carried out by Sheriff Villanueva and the County. (FAC ¶ 104.) Starks further alleges that Sheriff Villanueva encourages and ratifies County deputies' use of excessive force by, among several other things, (1) failing to investigate and break up police gangs that have existed for long periods of time; (2) allowing false statements and reports by deputies to go unchecked and uninvestigated; and (3) facilitating a "blue code of silence" in the Department under which deputies do not report other deputies' misconduct and instead claim ignorance. (FAC ¶ 106.) Starks

emphasizes that, even if Sheriff Villanueva did not have direct knowledge of all the details of the inner workings of The Executioners, he knows about their existence to a sufficient degree that his failure to act constitutes reckless indifference. (FAC ¶¶ 106(m)–(x), 109, 117, 121.)

These allegations are sufficient to state a claim against Sheriff Villanueva in an individual capacity. Right now, the Court is simply asking whether it is plausible, based on Starks's allegations, that Sheriff Villanueva knew about the existence of The Executioners and either failed to act to stop their activity, disregarded the obvious consequences of the existence of a violent deputy gang under his watch, or showed reckless indifference to the rights of citizens who might fall victim to such a gang. The answer to this question at this phase is "yes." Discovery will reveal whether Starks can substantiate her allegations.

For these reasons, the Court will not dismiss Sheriff Villanueva.

### C. *Monell* Municipal Liability (fourth through sixth claims)

Finally, Defendants argue that the Court must dismiss Starks's fourth through sixth claims in full because she fails to allege facts sufficient to support municipal liability pursuant to *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

To establish § 1983 municipal liability under *Monell*, plaintiffs must allege that: "(1) they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount to deliberate indifference to their constitutional rights; and (3) that these policies are the moving force behind the constitutional violations." *Lee*, 250 F.3d at 681–82 (cleaned up). "A policy or custom is considered a 'moving force' behind a constitutional violation if both causation-in-fact and proximate causation can be established." *Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008)). "Facts regarding the specific nature of the alleged policy, custom, or practice are required; merely stating the subject to which the policy relates (i.e. excessive force) is

insufficient." *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017).

Under these standards, Starks's FAC passes muster. Starks sufficiently alleges the "specific nature of the alleged policy, custom, or practice" by alleging details about the existence of The Executioners, the County's actual or constructive knowledge of their existence, and the County's failure to act to stop The Executioners' unconstitutional activity. *Id.* This is far more detailed than "merely stating the subject to which the policy relates," *id.*, and is likewise far more detailed than the boilerplate municipal liability allegations the Ninth Circuit has found insufficient in cases such as *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012). Moreover, based on Starks's allegations, it is plausible that the existence of The Executioners, and the County's failure to act to stop The Executioners, are both the cause-in-fact and the proximate cause of Decedent's death.

Starks's allegations are sufficiently specific that it is appropriate to "unlock the doors of discovery" and allow her to further investigate and substantiate her claims. *Iqbal*, 556 U.S. at 678. The cases Defendants cite are inapposite; in none of those cases did the plaintiff allege the existence of a named, well-defined deputy gang that had an established practice of rewarding its members for applying excessive force to innocent citizens. Starks's allegations are amply sufficient to place Defendants on notice of the nature of the claims such that they can search, identify, and analyze whether The Executioners exist, how they operate, and the effect of such a fact on Defendants' defense to this case. (*See* Mot. 23.)

For these reasons, the Court will not dismiss the municipal liability claims.

///
///
///
///
///

## V. CONCLUSION

Defendants' Motion to Dismiss is **DENIED**. (ECF No. 37.) Defendants shall answer within **fourteen (14) days** of the date of this Order.

**IT IS SO ORDERED.**

September 12, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**